**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOSE R.,**

                                  **Plaintiff,**

vs.                                               **6:20-CV-918**
                                                                 **(MAD/CFH)**

**KILOLO KIJAKAZI,** *Acting Commissioner of*
*the Social Security Administration*,

                                  **Defendant.**

---

**APPEARANCES:**                                 **OF COUNSEL:**

**JOSE R.**
945 Saratoga Street, Apt. 1
Utica, New York 13502
Plaintiff, *Pro Se*

**SOCIAL SECURITY ADMINISTRATION**     **CANDACE LAWRENCE, ESQ.**
J.F.K. Federal Building, Room 625               **LUIS PERE, ESQ.**
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER[1]

### I. INTRODUCTION

       On August 22, 2016, Plaintiff Jose R. filed an application for Supplemental Security Income ("SSI") and Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 18, Administrative Transcript ("Tr.") at 216-30. On November 21, 2016, Plaintiff's claims were denied. *See id.* at 112. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on October 18, 2018. *See id.* at 19-28.

---

[1] Kilolo Kijakazi has replaced Andrew Saul as Commissioner of the Social Security Administration and is substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

Plaintiff made a request to review the unfavorable decision, and on June 9, 2020, the Appeals Council denied Plaintiff's request to review. *See id.* at 5-7.

On August 13, 2020, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the Commissioner's unfavorable decision. *See* Dkt. No. 1. The Defendant Commissioner the Social Security Administration filed the Administrative Record on Appeal and a brief. *See* Dkt. Nos. 18, 21. Plaintiff has not submitted a brief in support of his position.

## II. BACKGROUND

At the time of his application, Plaintiff was forty-nine years old. *See* Tr. at 57. Plaintiff finished high school in the Dominican Republic and was educated in the Spanish language; Plaintiff cannot read and has limited ability to write in English. *See id.* at 58. Plaintiff lived with his wife and three children, had a driver's licence, and drove five times a week. *See id.* at 57, 58. Plaintiff testified that, in the fifteen years leading up to his application for SSI and DIB, he worked as a labeler, dishwasher, retail stock associate, forklift driver, and meat cleaner/weigher. *See id.* at 58, 251. At the time of his application, Plaintiff alleged disability due to a number of impairments, including acute prostatitis, scrotal mass, poor urinary stream, hypertension, lumbar radiculopathy, and high blood pressure. *See id.* at 239.

Plaintiff testified that he stopped working due to "a lot" of pain in his back and testicles. *Id.* at 59. Plaintiff explained that he went to the emergency room where they discovered that he had a herniated disc in his back and "a bag of water on one of [his] testicles." *Id.* Plaintiff also stated that he (1) "couldn't grab things using [his] hands, [his] legs would lock up and [he] would drop things" due to a non-malignant tumor on his wrist; (2) had a lot of pain in his hands and bones due to arthritis; (3) had chondrocalcinosis in his knees that caused him a lot of pain in his

legs, (4) had been prescribed a cane a few weeks prior to the hearing due to weakness and dysfunction in his left leg, and (5) was going to a psychologist and taking prescribed medication because he was "very depressed." *Id.* at 59-61.  Plaintiff testified that, as a result of his medical issues, he could only stand for about fifteen to twenty minutes at a time and lift about two or three pounds.  *See id.* at 61-62.  Plaintiff asserted that his pain was typically between a six and seven out of ten, but that there were days when his pain increased to a nine or ten out of ten.  *See id.* at 61.  Plaintiff stated that he could not cook, clean, do laundry, take out the trash, or go grocery shopping, and could only do the dishes some of the time.  *See id.* at 63-64.

In a decision dated October 18, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  *See id.* at 19-28.  In his decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since May 16, 2016; (2) Plaintiff's severe impairments include testicular hydrocele, lumbar degenerative disc disease, obesity, mild degenerative changes in hands and wrists, and left wrist DISI deformity; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (4) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that he can frequently stoop, kneel, crouch, crawl, and climb ramps or stairs, handle and finger bilaterally, and climb ladders, ropes, or scaffolds," but was limited to doing work without English literacy requirements; (5) Plaintiff was unable to perform any past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *See id.* at 21-27.

### III. DISCUSSION

**A.     Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

B.   **The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2016, the alleged onset date. *See* Tr. at 21. At step two, the ALJ concluded that Plaintiff had the following severe impairments: testicular hydrocele, lumbar degenerative disc disease, obesity, mild degenerative changes in hands and wrists, and left wrist DISI deformity. *See id.* at 21-22. The ALJ concluded that Plaintiff's claim of depression was not a medically determinable impairment because, despite his claim that he was being treated by a psychologist with medications, no record of such treatment were found. *See id.* at 22.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* The ALJ noted that he considered the criteria for Listing 1.04, Disorders of the Spine, and found that Plaintiff's degenerative disc disease did not rise to the findings that listing required. *See id.* The ALJ then found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can frequently stoop, kneel, crouch, crawl, and climb ramps or stairs, handle and finger bilaterally,

and climb ladders, ropes, or scaffolds. He is limited to doing work without English literacy requirements." *Id.* In so finding, the ALJ reasoned that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of his symptoms [we]re not consistent with [the] evidence." *Id.* at 23. Specifically, the ALJ noted that the medical records indicated that (1) Plaintiff had failed to follow through with recommendations or declined pain management recommendations and chose to use over the counter pain management medications instead; (2) one doctor had declined Plaintiff's request for a statement that Plaintiff was taken care of by his wife, instead determining that Plaintiff took care of himself and performed his own activities of daily living; and (3) Plaintiff had reported that he was lifting his young child and groceries and could comfortably lift fifty pounds. *See id.* at 26. The ALJ also noted that, "[a]s for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or has physical limitations greater than determined in the [RFC]." *Id.* The ALJ gave "significant weight . . . to the assessment of the medical consultative examiner, Dr. Jenouri, M.D., who stated that [Plaintiff] would have mild restrictions in walking, standing, and sitting long periods, bending stair climbing, lifting, and carrying." *Id.* The ALJ noted that Dr. Jenouri's finding was consistent with the medical evidence and that Dr. Jenouri had been able to observe and conduct a physical examination on Plaintiff. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* At the fifth and final step of the analysis, the ALJ concluded that, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 27. The ALJ solicited the testimony of a

vocational expert, who testified that a hypothetical individual of Plaintiff's age, with his education, past relevant work experience, and RFC could perform the representative occupations of Housekeeping Cleaner (300,000 jobs in the national economy), Inspector (80,000 jobs in the national economy), and Sorter (100,000 jobs in the national economy). *Id.* at 28. Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, during the relevant time period. *Id.*

C.  **Analysis**

Defendant argues that each of the ALJ's findings utilized the correct legal standards and were supported by substantial evidence in the record. *See* Dkt. No. 21 at 4. Plaintiff, currently acting *pro se*, has not submitted a brief in support of his complaint. Accordingly, the Court will address each of the ALJ's determinations that were unfavorable to Plaintiff.

   *1. Step Two - Plaintiff's Severe Impairments*

Under the second step on the five-step analysis, the ALJ must evaluate whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] An impairment or combination of impairments is "not severe" when "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). A claimant bears the burden of establishing that they have a severe impairment. *See Woodmancy v. Colvin*, 577 Fed. Appx. 72, 74 (2d Cir. 2014).

---

[2] According to Federal Regulations, "basic work activities" include, but are not limited to: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ's determination that Plaintiff's allegation of disability due to depression was not a medically determinable impairment had substantial support in the record. The ALJ relied on the fact that Plaintiff did "not submit[] medical evidence or information to document this impairment," Tr. at 22, and the Court's own examination of the record did not reveal any medical evidence documenting Plaintiff's treatment for depression by a psychologist with medication. Plaintiff's statements at the hearing, alone, were not sufficient to establish that he had a severe impairment. *See* 20 C.F.R. § 404.1512(a)(1) ("We will consider only impairment(s) you say you have or about which we receive evidence"); 20 C.F.R. § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source"); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques"); *see also Britt v. Astrue*, 486 Fed. Appx. 161, 163 (2d Cir. 2012) (holding that the claimant's argument that he had a severe impairment was "without merit because he did not furnish the ALJ with any medical evidence showing how the[] alleged impairments limited his ability to work").

Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff did not carry his burden of demonstrating that his depression was a severe impairment.

### 2. Step Three - The Listed Impairment Determination

A plaintiff will be found disabled if the individual has an impairment, or combination of impairments, that meets or equals one of the Listings. 20 C.F.R. § 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing. *See Davis v. Astrue*, No. 09-CV-0186, 2010 WL 2545961, *3 (N.D.N.Y. June 3, 2010). A plaintiff

must show that his or her impairment meets or equals all of the specified medical criteria of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superceded by statute on other grounds*. If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.*

The ALJ found that Plaintiff's degenerative disc disease did not meet or equal all of the specified medical criteria for Listing 1.04. Listing 1.04 required Plaintiff to show:

> Disorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (effective May 22, 2018 to September 23, 2019).

The ALJ's determination that Plaintiff failed to establish that his impairments reached the level of severity contemplated in the Listings was supported by substantial evidence in the record. As the ALJ explained in the decision, the medical evidence here does not meet even the initial requirement of Section 1.04—namely, a showing that a disorder of the spine has resulted in compromise of a nerve root or the spinal cord. *See* Tr. at 402 (MRI Imaging Report finding only "degenerative change . . . resulting in relatively mild spinal canal narrowing and mild to moderate

neural foraminal narrowing") (capitalization omitted); *see id.* at 505 (Office treatment record describing the MRI as showing "diffuse disc bulging throughout the entire lumbar spine," without "significant spinal cord compression").

The ALJ has also correctly determined that the medical evidence in the record failed to meet any of Section 1.04's additional requirements.  For Subsection A, Plaintiff's medical records have consistently shown normal neuro-anatomic findings, *see id.* at 245, 466, 485, 492, 499, 508, 537, 541, 581, 585, 591, 597, 604, 612, 616; for Subsection B, there has been no medical evidence—by operative note, pathology report, medically acceptable imaging, or otherwise—establishing the presence of Spinal arachnoiditis as manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; and for Subsection C, although some records may show "minor" spinal canal narrowing, *id.* at 401-02, such narrowing has not resulted in an inability to ambulate effectively in Plaintiff, who has consistently demonstrated a normal gait in examinations, *see id.* at 425, 465, 485, 492, 499, 508, 536, 540, 581, 591, 596, 604, 611, 616; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (effective May 22, 2018 to September 23, 2019) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities").

Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff did not carry his burden of demonstrating that his impairments met or equaled one of the Listings.

### 3. Step Three - The RFC Determination

A claimant's RFC represents a finding of the range of tasks he or she is capable of

performing notwithstanding the impairments at issue.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).  Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004).  An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand.  *See Compo v. Commissioner of Soc. Sec.*, No. 6:05-CV-973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07-CV-0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a.  Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered.  *See* 20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions

11

the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Here, the ALJ's "light work" RFC determination was supported by substantial evidence. The ALJ identified and examined each of Plaintiff's functional limitations—his pain, obesity, and the medical impairments pertaining to his testicles, spine, legs, hand, and wrist—and then determined his exertional capacities. In making that determination, the ALJ cited the medical evidence in the record that he relied upon and thoroughly explained how that evidence supported his conclusion for each functional limitation. Such evidence included: (1) Plaintiff's failure to follow through—or rejection—of his doctors' pain management recommendations, instead choosing to treat his pain with over-the-counter medications, *see* Tr. at 496, 586, 605; (2) the consistent findings of normal gait, strength, and sensation, *see id.* at 425, 465-66, 485, 492, 499, 508, 509, 536-37, 540-541, 581, 585, 591, 596-97, 604, 611-12, 616; (3) medical records documenting Plaintiff's ability to lift his child and groceries, *see id.* at 606, as well as comfortably lift fifty pounds, *see id.* at 590; and (4) the refusal of one of Plaintiff's doctors to provide a statement that Plaintiff was incapacitated and taken care of by his wife because it was the doctor's determination that Plaintiff could take care of himself and perform daily activities, *see id.* at 501. The ALJ also gave significant weight to the opinion of the medical consultative examiner, Dr. Jenouri, M.D., who found that Plaintiff had only "mild restrictions in walking, standing, . . .

sitting long periods, bending, stair climbing, lifting, and carrying." Tr. at 467. The ALJ noted that Dr. Jenouri had been able to observe and conduct a physical examination of Plaintiff, and that those findings were consistent with the medical evidence. Finally, the ALJ has accurately noted that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or has physical limitations greater" than the RFC determination and, indeed, Plaintiff's treating doctor never placed any restrictions on Plaintiff as a result of his limitations. *Id.* at 26.[3]

Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination.

### 4. Step Five - The Vocational Expert

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (internal quotation and other citation

---

[3] To the extent that Plaintiff might object to the ALJ's rejection of his subjective testimony about the intensity, persistence, and limiting effects of his symptoms as inconsistent with the medical evidence, such a determination was both permissible, *see Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (holding that "the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant"); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010), and substantially supported by the evidence in the record, as outlined above.

omitted).

Here, the ALJ provided the vocational expert with Plaintiff's age, education, work experience, level of English language literacy, and physical abilities, and posed a hypothetical question based upon the RFC assessment made at step four of the analysis. *See* Tr. at 69-73. Using this information, the vocational expert indicated that Plaintiff would be suitable for light, unskilled jobs such as Housekeeping Cleaner (300,000 jobs in the national economy), Inspector (80,000 jobs in the national economy), and Sorter (100,000 jobs in the national economy). *Id.* at 70. Because, as discussed above, there was substantial evidence in the record supporting the assumptions upon which the hypothetical question was based, the ALJ properly relied on the vocational expert's testimony in response to the hypothetical question. *See McIntyre*, 758 F.3d at 151-52.

Accordingly, the Court concludes that the ALJ properly relied on the vocational expert's opinion.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 8, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge